# EXHIBIT 3

| Carrier ID: | 1821417 | | |
|---|---|---|---|
| Carrier Name: | Borderlanders Inc | Agreement Date: | 11/14/2019 2:20:23 PM (Pacific Time) |
| Address: | 148 Oakville Dr Apt 1B | MC Number: | MC1019332 |
| City, State & Zip: | Pittsburgh, PA 152204420 | US DOT Number: | 3243700 |
| Contact: | Frank Akron | Phone: | 412-721-5835 |

## OUTSOURCE CARRIAGE AGREEMENT

This Outsource Carriage Agreement (hereinafter referred to as "OCA") is made and entered into between J.B. Hunt Transport, Inc., whose principal office is located at 615 J.B. Hunt Corporation Drive, Lowell, AR 72745, (hereinafter known as "JBHT") and Borderlanders Inc, whose principal office is located at 148 Oakville Dr Apt 1B Pittsburgh, PA 152204420 (hereinafter known as "CARRIER") (hereinafter collectively known as the "Parties").

### RECITALS

WHEREAS, JBHT is a carrier duly authorized to transport or to arrange for the transportation of freight; and, WHEREAS, JBHT has received approval from certain of its customers (hereinafter "Customer" or "Customers") to tender freight to various transportation service providers for outsourced services; and, WHEREAS, CARRIER is duly authorized by appropriate federal, state or provincial agency or agencies of either the United States or Canada, or both, to provide transportation services (proof of such authority or authorities shall be provided to JBHT by CARRIER); and, WHEREAS, CARRIER wishes to supply its services to JBHT for outsourced services; NOW, THEREFORE, JBHT and CARRIER hereby agree to the following terms:

1. **OCA and Other Documents.**
   1.1 **Applicability of 49 USC §14101 and Priority of Documents.** This OCA is entered into in accordance with 49 USC §14101. Except as may be otherwise provided herein or in any addenda hereto, this OCA, and the services provided hereunder, shall be subject to Titles 49 of the United States Code ("USC") and of the Code of Federal Regulations ("CFR"). Pursuant to 49 USC §14101(b)(1), however, JBHT and CARRIER hereby waive any and all rights and remedies provided under that part to the extent they are in conflict with the terms of this OCA and its addenda. Unless expressly stated otherwise in this OCA or its addenda, this OCA and any addenda shall govern the relationship between JBHT and CARRIER and all other documents shall be subordinate to them. In the event of a conflict between this OCA and an addendum or amendment the term of the addendum or amendment shall apply. This OCA and any attachments, exhibits, amendments or addenda hereto shall be the entire agreement between the parties and supersedes and cancels any and all prior written or oral agreements and understandings regarding the subject matter of this OCA between the Parties. No modifications or amendments to this OCA shall be binding upon JBHT unless initialed and signed by a JBHT authorized representative. This OCA may not be assigned by CARRIER in whole or in part without the prior written agreement of JBHT.
   1.2 **Contract Carriage/Standard Bill of Lading Terms.** Except as otherwise provided in this OCA and any addenda hereto, whether or not CARRIER is authorized to operate, or does operate, as a common carrier, each and every shipment tendered to CARRIER by JBHT during the term of this OCA shall be deemed to be a tender to CARRIER as a motor contract carrier. All shipments shall be deemed to have been made on the Uniform Straight Bill of Lading despite the bill of lading form that is supplied for any individual shipment.
   1.3 **Load Tender Form.** JBHT shall submit load tenders (hereinafter "Tender" or "Tenders") to CARRIER on the behalf of Customers. The transportation services provided by CARRIER shall be designed to meet the distinct transit, service and pricing requirements of JBHT and Customers, as set out in each Tender. The origins and destinations to be served, the commodities to be transported, and the rates and charges applicable to the transportation services shall be included in the Tender. Acceptance of the Tender and its terms shall be made by signature and return by CARRIER or by actual acceptance of the tendered shipment. All Tenders shall be deemed binding attachments to this OCA and shall be controlled hereby. Driving directions to or from a customer's location may be communicated to the CARRIER via the load tender document or other specified means. Directions are for informational purposes only. It shall be the CARRIER()'s sole responsibility to insure the directions are appropriate and JBHT makes no guarantee with respect to specified routes and the compatibility of those routes with regards to any type of equipment.

2. **Relationship of the Parties.**
   2.1 **CARRIER Status.** CARRIER shall perform any and all services hereunder as an independent contractor. No provision of this OCA or any act or omission of either party shall be construed for any purpose to express or imply a joint venture, partnership, principal/ agent, fiduciary, parent/subsidiary, employer/employee relationship or other such relationship implying a lack of independent operation by CARRIER. CARRIER shall provide sole supervision and liability for and shall have exclusive control over the operations of its personnel, contractors, subcontractors, and other agents, as well as any and all other vehicles, equipment and property, whether tangible or intangible, under the control of CARRIER. JBHT shall have no right to discipline or direct the performance of any personnel, contractors, subcontractors, and other agent of CARRIER. CARRIER agrees and warrants that it shall at no time and for no purpose represent any affiliation with JBHT other than that of an independent contractor and shall not, other than in that capacity, set itself out as having any power or authority to act on the behalf of or to bind JBHT. CARRIER shall at no time knowingly or willfully take any action that in any way reflects negatively on JBHT.
   2.2 **CARRIER Personnel.** CARRIER assumes full responsibility and liability for the payment of the following listed items and agrees to comply with the laws, and any rules and regulations promulgated thereunder, by any applicable federal, state, provincial or local jurisdiction (and, when applicable, shall provide periodic proof of such compliance): payroll taxes or contributions to taxes for unemployment insurance, old age pensions, worker's compensation, social security, or other related protection with respect to persons engaged in the performance of said transportation services. JBHT shall not be responsible for any act or omission of any personnel, contractors, subcontractors or other agents of CARRIER. CARRIER shall fully indemnify and hold JBHT harmless under the terms of indemnity, herein, for any claim brought against JBHT for any such employment obligation.

3. **Non-exclusivity.**
   3.1 **OCA not Exclusive.** Unless otherwise agreed through a written amendment hereto, CARRIER and JBHT agree that this OCA is nonexclusive and that JBHT may utilize other Carriers to fulfill the transportation needs of the customers of JBHT. In addition, CARRIER shall be free to accept freight from customers other than JBHT. CARRIER is further notified, understands and agrees that all loads tendered are on an "as needed" basis and nothing contained herein, nor any tendered are on an "as needed" basis and nothing contained herein, nor any guarantee any volume of any kind or constitute any commitment whatsoever to utilize the services of CARRIER.

4. **CARRIER Service Requirements.**
   4.1 **Communications with JBHT** CARRIER shall be responsible to give periodic updates on the status of any shipment for which it accepts tender. Such

communication shall be to advise JBHT of information such as, but not limited to: CARRIER's arrival for loading and unloading at each stop; confirmation of completion of loading and unloading at each stop; any overage, shortage or damage information relating to cargo; notice of the location where any trailer is spotted, if JBHT or customer equipment is used; periodic check calls, and accident reporting. The method(s) CARRIER uses to provide such information to JBHT shall be approved by JBHT and may include: EDI, ELT, DraynetTM (a proprietary program designed by JBHT), facsimile, Internet, e-mail, telephone, or other agreed means. CARRIER acknowledges receipt of and agrees to follow the J.B. Hunt Cargo Claims and Accident Reporting procedures attached hereto as Attachment A.

4.2 **Covenant Not to Back Solicit.**

 4.2.1 **No Back-Solicitation.** Except where mutual customers exist, CARRIER hereby agrees that neither it nor its independent contractors, subcontractors, owner operators or agents will, while this OCA is effective and for a period of one (1) year following termination of this OCA, directly or indirectly solicit or accept traffic from customers, shippers, or consignees initially introduced to it by JBHT or from customer-specific shipping origins and destination point-to-point lane combinations that were first tendered to CARRIER by JBHT (hereinafter "JBHT Traffic"). The term "mutual customers" includes any customers with whom CARRIER has provided transportation services within 6 months prior to CARRIER's execution of this OCA and who also do business with JBHT.

 4.2.2 **Penalty for Breach.** If CARRIER, its independent contractors, subcontractors, owner operators or agents at any time while this OCA is effective or within one (1) year following termination of this OCA, directly or indirectly solicits or accepts JBHT Traffic as defined herein, JBHT shall be entitled to a commission of thirty-five (35%) of the linehaul revenue received by CARRIER on such JBHT Traffic.

4.3 **Prohibition Against Brokering.** Except as may be otherwise provided in this OCA or any addenda hereto, **CARRIER hereby agrees and acknowledges that it is strictly prohibited from using other motor carriers, or brokers, or "substituted services" for the services to be performed hereunder for JBHT and Customers.** Trip leasing shall not be allowed hereunder. Should CARRIER violate any of the prohibitions contained in this section, CARRIER agrees that it shall be fully liable for any payment due to such motor carriers or brokers or for substituted services. CARRIER further agrees that it shall be fully liable for any loss, damage or delay to the Commodities of JBHT's Customer(s), and any and all liabilities, losses, claims, costs, damages, and injuries (including death) incurred in transit to the same extent that CARRIER would be liable if it performed the transportation directly. Should CARRIER use other motor carriers / "substituted services" or broker out any movement tendered by JBHT, such action shall constitute a breach of this OCA. Each incident of such breach shall subject the CARRIER to immediate termination of this OCA, subject to the sole discretion of JBHT. Such penalty shall not be a limitation of remedies available to JBHT for any such breach.

4.4 **Hazardous Materials.** JBHT may tender hazardous material shipments to CARRIER if CARRIER meets all requirements established in Attachment B to this OCA. CARRIER hereby acknowledges receipt of and agrees to be bound by the Extra Requirements for Hazardous Materials Shipments attached hereto as Attachment B. CARRIER shall be responsible to inspect all paperwork tendered by a shipper to insure its accuracy and the commodity being shipped. In the event JBHT tenders a load to CARRIER that is not designated as containing hazardous materials and upon arrival at a shipper's location the CARRIER is informed or discovers that that shipper intends to load hazardous materials, or similar other commodities for which special permits or authority is required and for which CARRIER has not been approved to transport for JBHT, then CARRIER shall be responsible to notify JBHT and to reject any such shipment. In the event CARRIER fails to reject a shipment containing hazardous material then CARRIER shall indemnify and hold JBHT harmless form all fines, penalties, claims, cleanup, environmental harm or any other associated costs that arise as a result of transporting such load. If CARRIER properly notifies JBHT of the discovery of a hazardous material shipment and can provide a current Hazardous Materials Certificate of Registration issued by the US DOT and, at its expense, insurance as required by 49 CFR 387.9 and CARRIER wishes to transport the hazardous material shipment, then CARRIER and JBHT may negotiate for such services on a load-by-load basis.

4.5 **Security Requirements.** JBHT is a participant in the Customs-Trade Partnership Against Terrorism ("C-TPAT", with U.S. Customs) and Partners in Protection ("PIP" with Canadian Customs). As such JBHT expects CARRIER to comply in order for JBHT to remain compliant with such programs.

4.6 **Equipment.**

 4.6.1 CARRIER shall ensure that the transportation services shall be performed with equipment which is in good order, condition and repair and which meets with all applicable federal and state laws, rules and regulations, including but not limited to those of the DOT.

 4.6.2 CARRIER acknowledges that JBHT deals in commodities requiring sanitary equipment that is in compliance with local, state and federal statutes and regulations. CARRIER agrees that it will provide only equipment which is in compliance with such statutes and regulations, and specifically agrees that no equipment will be supplied for transportation of shipments hereunder which has ever been utilized to haul garbage, industrial, municipal or residential refuse, solid or liquid hazardous waste or any similar materials.

4.7 **Receipts and Bills of Lading.** Each shipment hereunder shall be evidenced by a receipt, which shall be signed by an agent or employee of CARRIER and showing the kind and quantity of product received by CARRIER at origin, the name of CARRIER's employee and naming CARRIER as the carrier of the shipment. Such receipt shall be presumptive evidence of CARRIER's receipt of such shipment in good order and condition unless the contents of such shipment are not readily observable or as may otherwise be noted on the face of such receipt. If the CARRIER, JBHT or Customer elects to use a bill of lading, manifest or other documents, any terms, conditions and provisions of such bill of lading, manifest or other documents shall not operate as an amendment to this OCA, but shall be subject and subordinate to the terms, conditions and provisions of this OCA and, in the event they conflict with this OCA, the terms, conditions and provisions of this OCA shall prevail and take precedence.

4.8 **Representations and Warranties Regarding Drivers and Equipment.** CARRIER represents and warrants that its drivers and equipment will meet the following requirements:"

 a. Drivers will be qualified by CARRIER in accordance with 49 CFR 391, 392 and 380 (as applicable);

 b. Drivers will have completed controlled substance and/or alcohol testing as required by 49 CFR 382;

 c. Drivers will have no more than 3 moving violations in the past 3 years (from conviction date);

 d. Drivers will have no DWI or DUI convictions in the past 5 years or a current charge pending (from conviction date);

 e. Drivers will have no careless or reckless driving violations in the past 5 years (from conviction date);

 f. Drivers will have a valid CDL of the proper class with necessary endorsements;

 g. Drivers will be properly rested and in compliance with 49 CFR 395;

 h. CARRIER acknowledges that is satisfies its duty to monitor driver hours of service compliance in accordance with FMCSR;

 i. Equipment provided by CARRIER will meet the requirements of 49 CFR 393 and 396;

 j. Equipment will be inspected by the driver and determined to be free of defects likely to result in an accident or mechanical breakdown;

 k. CARRIER possesses all necessary authority, permits and other documents required for movement of the freight tendered.

4.9 **US/CANADA or US/MEXICO BORDER CROSSINGS.** The CARRIER in possession of a load when it crosses an international border is solely

responsible for ensuring that they have proper paperwork and clearances to move the load across a border. Any penalties or fines imposed by Customs for failure to do this correctly are the responsibility of the CARRIER, and not JBHT.

5. **CARRIER Qualification**

5.1 **Authority.** As stated in the Recitals, CARRIER shall provide proof that it is duly authorized to perform the specified services it is to provide to JBHT. CARRIER shall not transport any tendered shipment and shall notify JBHT immediately in the event all or any part of such required authority is cancelled. If CARRIER performs any services for which it does not or no longer possesses proper authority, then it shall forfeit the right to payment for such services and shall hold JBHT and Customers harmless under the terms of Indemnification herein.

5.2 **Safety Rating.** CARRIER shall provide JBHT with a copy of the most recent safety rating for CARRIER. If CARRIER is operating domiciled in California then carrier shall also provide a copy of the most recent BIT inspection for CARRIER. Unless otherwise approved, the safety rating for CARRIER must be Satisfactory. CARRIER shall immediately notify JBHT if CARRIER's safety rating becomes Conditional or Unsatisfactory. In the event of a Conditional or Unsatisfactory rating, JBHT may suspend all tender of all shipments until such rating is again acceptable and JBHT may exercise the right to immediate termination of the OCA.

5.3 **Insurance.**

5.3.1 **Procurement.** CARRIER shall procure and maintain, at no cost to JBHT, and with reputable and financially responsible insurance underwriters with an AM best rating of "B+" or better, the following insurance coverages:

5.3.1.1 Cargo liability insurance, whether All-Risk or Broad Form, covering risks for loss of or damage to shipments, in the minimum amount not less than One Hundred Thousand Dollars ($100,000) per shipment;

5.3.1.2 Automobile liability insurance for bodily injury (including injury resulting in death) and loss of or damage to property, in the amount not less than One Million Dollars ($1,000,000) combined single limit per occurrence, and extending to "Any Auto" or "All Owned, Hired and Non-Owned Autos." "Scheduled Autos" is acceptable providing the specific vehicle to be utilized is named on the carrier's insurance schedule.

5.3.1.3 Workers' compensation insurance as required by applicable law (AM Best rating of "B" or better is acceptable for workers' compensation coverage);

5.3.1.4 Any additional insurance requirements under any and all applicable United States, Canada and Mexico federal, state, provincial and local laws, regulations and rules.

5.3.2 **Certification.** CARRIER shall furnish to JBHT written certificates showing that the above insurance has been procured and is being maintained, the amount of any deductibles, self-insured retentions or the like applying to each policy, and specifying the name of the insurer, insurance underwriter, producer or issuing agency, the policy number or numbers, and the expiration date or dates. JBHT shall be a certificate holder on the policies described above and, as to each policy, in the event of cancellation or material modifications of any policy, written notice shall be given to JBHT at least thirty (30) days prior to the effective date of such cancellation or modification. Should CARRIER's insurance be cancelled at any time for any reason whatsoever then CARRIER must notify JBHT immediately and CARRIER shall not accept any further shipments.

5.3.3 **Applies to Independent Contractors.** Insurance provided by CARRIER hereunder shall also completely and unconditionally apply and extend to and cover losses or liabilities occasioned by any and all independent contractors, subcontractors, or owner operators of any tier utilized by CARRIER to transport freight tendered by JBHT. Certificates of insurance provided to JBHT shall specify such application to and coverage of such sub-/independent contractors and owner operators.

5.3.4 **Exclusions and Restrictions.** The coverage provided under the cargo policy and other policies required herein shall have no exclusions or restrictions of any type that would forseeably preclude coverage relating to loss and damage claims, including reasonable cargo claims. CARRIER hereby agrees to provide directly to JBHT and grants permission to and requires its insurance producers and insurers to provide directly to JBHT upon JBHT's request a copy of all insurance policies of every coverage type, including a copy of all exclusions from the cargo policy. CARRIER's cargo insurance policies shall be primary and not contingent and shall not exclude coverage for infidelity, fraud, dishonesty, or criminal acts of CARRIER or of the personnel (including officers and directors), contractors, subcontractors, owner operators or other agents of CARRIER. If said policy contains such exclusions, CARRIER shall obtain and furnish a policy extension or surety bond providing such coverage to the satisfaction of JBHT.

5.3.5 **Premiums and Deductibles.** CARRIER shall be responsible for all premiums and deductibles, and not withstanding any provision of the paragraph, it is understood and agreed that the liability assumed by CARRIER hereunder shall not be limited to the insurance coverage stipulated herein. No policy shall have a deductible, retention, self-insured retention or the like in excess of $10,000.

5.3.6 **Failure to Comply with Requirements.** Breach. CARRIER agrees that breach of the provisions of this Article 5 constitutes a material breach of this OCA whereupon JBHT may, upon notice, immediately terminate this OCA.

6. **Payment**

6.1 **Payment Terms.** CARRIER shall make a best effort to invoice JBHT within fourteen (14) days of a shipment's delivery. JBHT shall pay CARRIER for its services pursuant to the terms in the Tender, or as otherwise agreed in writing, and upon receipt by JBHT from CARRIER of (1) the original bill of lading or shipping order, (2) delivery receipt (such bills of lading, shipping orders and delivery receipts shall be referred to as "Shipment Documents" (3) a copy of the Tender and (4) CARRIER's invoice. CARRIER shall write the JBHT load number on each such document for purposes of identification and cross-referencing. Failure by CARRIER to provide any Shipment Documents may, within the sole discretion of and to the satisfaction of JBHT, be grounds for withholding or delaying payment for services related to the subject shipment. JBHT shall have no responsibility to pay any invoice received more than one hundred eighty (180) days from the date of a shipment's delivery. The parties agree that any monies owed by JBHT to CARRIER may be withheld or offset by any claims or other amounts that CARRIER may owe to JBHT, including, but not limited to for any overpayments or payments made in error by JBHT. In addition, in the event that CARRIER ceases on-going operations, has its liability or cargo insurance coverages cancelled or revoked, otherwise breaches this OCA, is insolvent, files a petition in bankruptcy, or if a trustee is appointed to liquidate the assets of CARRIER, the parties agree that any monies owed by JBHT may be withheld and offset by any claims or other amounts that may be owed by CARIER to JBHT.

6.2 **Responsibility for Payment.** CARRIER agrees that it shall look solely to JBHT for payment for any services rendered hereunder, and shall not, in any event whatsoever, contact the Customer, Shipper, Consignor or Consignee regarding payment of freight bills without the prior, express written consent of JBHT. In the event CARRIER or any of its independent contractors, subcontractors, owner operators or other agents violates this provision, then CARRIER shall be subject to a penalty of $500 per occurrence.

7. **No Lien.** CARRIER shall have no lien and CARRIER hereby expressly waives its right to any lien on any cargo or other property of JBHT or its Customers. As such, CARRIER shall not withhold any freight due to a dispute with JBHT regarding any freight charges.

8. **Cargo Liability and Claims.**

8.1 **Liability.** CARRIER shall be liable to JBHT, and its Customers, as set forth in Title 49 United States Code §14706 (the Carmack Amendment) and applicable common law, for any and all loss of the shipment due to loss of or damage (injury) to cargo transported pursuant to this OCA, occurring while in the care, custody or control of CARRIER irrespective of where the loss, damage or delay occurs (in interstate, foreign, intrastate, domestic or trans-border commerce originating at a point in and/or destined to a point in the United States, Canada, or Mexico). Any attempt by CARRIER to limit their liability or amend this OCA by provisions contained in any bill of lading, delivery receipt or tariff (whether filed, published or independently determined), whether purported to be incorporated by reference into this OCA by an attachment or otherwise shall be deemed null and void.

8.2 **Claims** JBHT shall act as the third party administrator for any claim brought by Customers. CARRIER hereby acknowledges receipt of and agrees to follow the J.B. Hunt Cargo Claims and Accident Reporting Procedures attached hereto as Attachment A. In the event that the receiver refuses to accept a load for delivery or any portion of a load, CARRIER agrees to cooperate with the JBHT in investigating and resolving the delivery of the load at issue, including, but not limited to, waiting at the receiver or other designated location until an adjuster arrives to inspect the load, the receiver is persuaded to accept the load, and/or the shipper provides other directions regarding the disposition of the load. CARRIER agrees to comply with any reasonable requests of JBHT, the shipper or receiver regarding the disposition of the load, including delivery of the load to another specified location. If CARRIER fails to cooperate, CARRIER shall be liable to JBHT for any additional costs or expenses incurred by JBHT in the investigation and resolution of the load at issue, including, but not limited to costs and expenses associated with employing the services of another carrier to complete delivery and disposition of the load, CARRIER agrees that JBHT shall be entitle to withhold and offset any such amounts against any amounts owed by JBHT to CARRIER. Except as specifically set forth to the contrary herein, all claims for overage, shortage, loss and damage and any salvage arising therefrom shall be submitted to CARRIER and handled and processed in accordance with 49 CFR Part 370. CARRIER shall acknowledge receipt of all such claims within thirty (30) days, and shall settle all claims within (120) days of receipt.

8.3 **Salvage.** In the event branded or labeled goods are damaged, JBHT (in conjunction with Customer) may determine, in its sole discretion, whether the goods may be salvaged and, if salvageable, the value of such salvage. CARRIER shall not sell, otherwise dispose of, or permit the sale, disposal or salvage of any goods bearing any trade name, trademark, logo or service mark without first, obtaining the written consent of JBHT and then removing all such trade names, trademarks, logos or service marks prior to such sale or disposal.

8.4 **Time Limits.** Except as otherwise set out in this Article 8, the time limits for filing of loss and damage claims, and time limits for filing any action at law for disallowance of claims, shall be governed by the provisions contained in 49 U.S.C. Sections 14705 & 14706.

9. **Undercharge and Overcharge Claims.** Except as otherwise expressly provided for herein, all claims for overcharge, undercharge and duplicate payment shall be processed as provided in 49 C.F.R. Part 378. The time for filing of initial claims for alleged undercharges, overcharges or duplicate payments under the terms of this OCA shall be one hundred and eighty (180) days from the date of receipt of the original invoice containing such disputed charges. Failure to file a claim challenging initial charges within said one hundred and eighty (180) day period shall forever bar any action at law for recovery of the same. Any action at law by either party to collect alleged undercharges or overcharges under the terms of this OCA shall be commenced not later than eighteen (18) months after delivery of the shipment. Expiration of said eighteen (18) month term shall be a complete and absolute defense against any such claim, regardless or any extenuating or mitigating circumstances or excuses of any nature whatsoever.

10. **Indemnity**

10.1 **Terms.** CARRIER shall defend, indemnify and hold JBHT and its Customers ("Indemnitee(s)") harmless from all fines, costs, penalties, liabilities and claims of every kind, including attorneys' fees, costs of suit, settlements, judgments, and all other expenses to which JBHT or its Customers may be subjected on account of bodily injury to persons (including injury resulting in death) and loss of or damage to any property whatsoever (including cargo), violation of Law, or any other claim arising out of or in connection with the transportation of property under this OCA by CARRIER or the personnel, contractors, subcontractors or any other agent of CARRIER. CARRIER's obligation to defend, indemnify and hold JBHT and its Customers harmless under this provision shall not in any manner be subject to any limitation on the amount or types of damages, compensation or benefits payable by CARRIER or the contractors, subcontractors or other agents of CARRIER under applicable worker's compensation acts, disability 10 Version 5 / 07/02/2012 / ICS-Standard-Web Version 10 benefit acts or other employee benefit acts, and CARRIER hereby specifically waives, and shall cause its independent contractors, subcontractors, and owner operators to waive any immunity any of them may have under such acts. JBHT shall defend, indemnify and hold harmless from all fines, costs, penalties, liabilities and claims of every kind including attorney's fees, costs of suit, settlements, judgments, and all other expenses to which CARRIER may be subjected on account of bodily injury to persons (including injury resulting in death) and loss of or damage to any property whatsoever (including cargo), violation of law, or any other claim caused by the sole gross negligence or intentional wrongful acts or omissions of JBHT.

10.2 **Notice of Claims.** JBHT shall give CARRIER notice of any claim or suit coming within the purview of the foregoing indemnity. CARRIER will assume the defense of any claim, demand or action against an Indemnitee and will, upon the request of the Indemnitee, allow the Indemnitee to participate in the defense thereof, such participation to be at the expense of the Indemnitee. Termination of this OCA shall not affect the continuing obligations of CARRIER hereunder with respect to those acts, breaches, failures or omissions falling within the purview of the foregoing indemnity and which shall have occurred prior to such termination.

11. **Compliance with the Laws** With respect to the transportation services provided herein, CARRIER shall comply, and cause its independent contractors, subcontractors, or owner operators to comply, with all applicable Federal, state and local laws, rules, regulations and ordinances, including, but not limited to all rules and regulations promulgated by the DOT and all other federal and state agencies and departments having jurisdiction over the transportation services to be performed. CARRIER shall defend, indemnify, and hold JBHT and its Customers harmless from and against any and all fines, penalties, judgments, liabilities, expenses and costs of any nature whatsoever arising or resulting from CARRIER's or its independent contractors, subcontractors, or owner operators' failure to comply with all such laws, rules, regulations and ordinances.

12. **Force Majeure.** Non-performance caused by acts of God or government, fire, riots, wars, strikes, labor disturbances, major snow storms, natural catastrophes, or other circumstances beyond the control of the Parties shall be excused to long as the hindrance to performance exists. CARRIER will notify JBHT immediately upon incurring any Force Majeure condition which prevents their performance under this OCA.

13. **Notices.** Any notice required by this OCA shall be in writing and sent via certified mail, return receipt requested or by overnight courier to:

CARRIER                    JBHT:

Borderlanders Inc          J.B. Hunt Transport. Inc.

148 Oakville Dr Apt 1B     615 J.B. Hunt Corporate Dr.

                           P.O. Box 130

Pittsburgh, PA 152204420 Lowell, AR 72745

Attn: Director of Litigation

14. **Term/Termination.** The term of this OCA shall begin on the last date it is executed by either of the parties or the acceptance of CARRIER of any Tender from JBHT pursuant to this OCA, whichever occurs first, and shall continue for a term of one year. The OCA shall be renewed automatically from year to year thereafter. Provided, however, that either party may terminate this OCA at any time during the initial term or any renewal term by giving the other party no less than thirty (30) days prior written notice. Termination of this OCA shall also constitute termination of any Amendment hereto. The obligations reflected in paragraphs 4.2, 6, 8, 9, 10 and 13 shall survive the termination of this OCA.

15. **Choice of Law and Forum/Savings Clause.** This OCA and any addenda and any conflict arising thereunder shall be subject to all applicable United States federal law and the laws of the State of Arkansas, without regard to its conflict of law rules. The parties agree that for all claims personal jurisdiction and venue shall be in the State of Arkansas and CARRIER agrees to waive any and all objections thereto. If any part of this OCA is deemed to be in violation of any law, such part shall be severed form this OCA and the remaining provisions of the OCA shall continue in full force and effect.

16. **Confidentiality.** Carrier acknowledges that any and all information emanating from JBHT's or its Customer's business, in any form, including any compilations or otherwise nonpublic information is "Confidential Information" and Carrier shall not, during or after the term of the Agreement for five years, permit the duplication, use or disclosure of any such Confidential Information to any person (other than its own employees, agent or representative who must have such information for the performance of its obligations hereunder), unless such duplication, use or disclosure is specifically authorized by JBHT or its Customer. Carrier shall be responsible for any unauthorized disclosure made by any of its employees, agents, or representatives and shall take reasonable precautions to prevent such disclosures. Carrier acknowledges that the unauthorized disclosure or use of JBHT's or its Customer's Confidential Information would cause irreparable harm, the degree of, which may be difficult to ascertain. Accordingly, Carrier agrees that JBHT or its Customer will as a matter of right be entitled to obtain an immediate injunction, without posting of bond, enjoining any actual or proposed breach of this Agreement, as well as the right to pursue any and all other rights and remedies available at law or in equity for such a breach.

This OCA is executed this 14th day of November, 2019. By doing so, each signatory represents that it has been or is specifically authorized to execute contracts on behalf of the entity they represent.

## ATTACHMENT A TO OCA J.B. HUNT CARGO CLAIMS AND ACCIDENT REPORTING PROCEDURES

1. **ACCIDENTS** All accidents/events, meeting the criteria outlined below, should be reporting to J.B. Hunt's safety/claims department (1-800-723- 9029). The phones are staffed 24 hours per day 365 days per year. All reportable accidents/events should be reported to the safety/ claims office within 2 hours of the occurrence. The only exception to that requirement is an accident/event that results in a fatality and that should be reported immediately.

   Any accident/event that could potentially result in cargo damage

   Any accident/event that results in a fatality

   Any accident/event that results in a serious injury (defined as any life altering or life threatening injury). Examples of these would include but not necessarily be limited to amputations, loss of bodily functions, loss of eyesight, etc.

   Any accident/event expected to result in losses totaling more than $50,000

   Any accident/event involving J.B. Hunt equipment (i.e. trailers or containers)

   Any accident/event involving J.B. Hunt employees. (i.e. spotters)

2. **CARGO CLAIMS**

**Loss and Damage**

Cargo claims, whether they are caused by shortage or damage, are an expense that can be reduced with your assistance. Call JBHT Cargo Claims (OS&D Dept.) from the shipping or receiving dock, or anywhere in transit, when you have cargo damage, overage, shortage, or other discrepancy. JBHT Cargo (OS&D) can be reached at 800-723-7106 24 hours per day, 7 days per week, 365 days per year.

Each load has its own JBHT load number, which is to be shown on all paperwork. It is to be placed in the top right hand corner of the Bill of Lading, or as close as possible to the top right hand corner.

**When to Call**

1. *Anytime there is an exception at the time of delivery; overage, shortage, damage, or simply seal exception.*
2. If a shipper refuses to seal the load or place the seal number on the paperwork.
3. Anytime during transit, while doing your regular equipment checks, if you notice a seal has been broken, or compromised.
4. When picking up a unit at a rail yard, call in if you see a different seal number than what is on the bills, or if you see any trailer damage. PELASE MAKE SURE that you note these exceptions on the rail outgate report, as well as reporting to the rail police.
5. When picking up a unit at a drop yard, call in if seal is different than what is on the BOL, or if seal is missing.
6. Anytime there is any kind of mishap during transit that could affect cargo, such as an accident or incident.

If the cargo to be loaded is in poor condition or the count is wrong, tell the shipper. If a disagreement occurs, call JBHT Cargo/OS&D before loading or signing for the load.

**Steps to Take to Avoid Cargo Claims**

1. **Shipper Load and Driver Count (SLDC):** Check condition and count. It will take longer to ensure an accurate count, but take your time! Have the shipper seal the load and note the correct seal number on all copies of Bill of Lading.
2. **Shipper Load and Count (SLC):** Be sure bills of lading show correct seal number and Shipper's responsibility by the statement "Shipper's Load and Count, or SLC".
3. **Driver Loads and Counts (DLC):** Driver responsible for the cargo count, as well as ensuring proper loading, blocking, and bracing of the load for transit.
4. **Driver Unload (DU):** Always break the seal in presence of receiver and have him/her sign "Seal # ___ intact" on BOL.

5. **Receiver Unload/Driver Assist (RUDA):** If any damages, shortages, or overages are noted, call OSD at 800-723-7106 immediately before leaving the receiver.
6. **Receiver Unload (RU):** When dropping a trailer, have the receiver, or receiver's agent, sign "Seal#_____ intact" on the BOL. If a Live unload, and any damages, shortages, or overages occur, call OSD immediately before leaving the receiver.

If a load shifts during transit and has to be corrected, the CARRIER in possession of the load at the time the load shift is discovered is responsible for any fees to get the load corrected. The Claims OS&D group can help the CARRIER find a vendor to help with this, but the CARRIER will be billed, not JBHT. The same will be true for instances of correcting overweight trailers, or transloading freight because of equipment problems.

3. **CARGO SECURITY** CARRIER shall comply with generally accepted industry standards regarding cargo security and CARRIER's insurance policy requirements.

## ATTACHMENT B TO OCA EXTRA REQUIREMENTS FOR HAZARDOUS MATERIALS SHIPMENTS

For any shipment arranged by JBHT to be transported by CARRIER involving the transportation of hazardous materials, the parties agree the following provisions shall apply, in addition to provisions in the OCA to which this Appendix is attached:

1. CARRIER represents and warrants that it holds all Federal and/or state permits and registrations necessary to transport hazardous materials. CARRIER shall provide JBHT copes of all appropriate documents upon JBHT's request.
2. CARRIER shall immediately notify JBHT of (a) any revocation or suspension of its permits and registrations described in section 1, above, and of (b) any change in its USDOT safety rating.
3. CARRIER also represents and warrants all of its drivers shall be, at the time they transport any hazardous material shipment, (a) properly trained under Federal and state laws, including, as example, 49 CFR §§172.700 and 177.800, and (b) have the proper endorsements on their Commercial Driver's License to transport such shipments.
4. CARRIER shall comply with all Federal, state, and local laws regarding the transportation of hazardous materials, including, as example, 49 CFR Parts 172 and 397.
5. If CARRIER is tendered a shipment of hazardous materials it must maintain, at a minimum $1 million ($US) liability coverage under 49 CFR §387.9. CARRIER shall ensure that it procures and maintains, at its sole expense, public liability and property damage insurance from a reputable and financially responsible insurance company insuring CARRIER for at least $1 million ($US) per occurrence. Such insurance shall name CARRIER and JBHT as insureds for any and all liabilities for personal injuries (including death) and property damage, including environmental damage due to the release of a hazardous substance and/or hazardous material, arising out of or in any way related to CARRIER's transportation operation. As evidence of this coverage, CARRIER shall provide JBHT a copy of the proper hazardous materials endorsement evidencing such coverage.

Name of Authorized Carrier Representative: Frank Akron
Title of Authorized Carrier Representative: CEO
Phone number of Authorized Carrier Representative: 412-721-5835
Email of Authorized Carrier Representative: info@borderlandersinc.com

Agreement Date: 11/14/2019
☑ "I, Frank Akron, am the CEO for Borderlanders Inc. I am authorized to execute the Transportation Brokerage Agreement (the "Agreement") set out above dated 11/14/2019 2:20:23 PM between JB Hunt and Borderlanders Inc and legally bind the Borderlanders Inc to the terms and conditions set forth therein. This electronic signature serves as an original, and any electronic version and other signatures are incorporated as if originals into the Agreement. This electronic signature shall have the same force and effect as an original source.

BY CLICKING THE ACCEPTANCE BUTTON, I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THE AGREEMENT AND AGREE TO THE ENTIRETY OF THE TERMS & CONDITIONS CONTAINED THEREIN. THE AGREEMENT SHALL BE BINDING ON BORDERLANDERS INC. I UNDERSTAND AND ACKNOWLEDGE THAT BORDERLANDERS INC IS THE "CARRIER" AS THAT TERM IS USED IN THE AGREEMENT."