**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Crystal Gee, et al.,

Plaintiffs,

v.

J.B. Hunt Transport Incorporated, et al.,

Defendants.

No. CV-24-08064-PCT-SMM

**ORDER**

This matter is before the Court on Defendant J.B. Hunt Transport, Inc.'s ("J.B. Hunt") Motion for Summary Judgment. (Doc. 179). The Motion is fully briefed. (Docs. 170-84; 188). The Court finds resolution of the Motion is appropriate without oral argument. For the following reasons, the Court grants in-part and denies in-part the Motion. (Doc. 179).

## I. BACKGROUND

### A. Factual Background

This case concerns a vehicular tragedy. Plaintiffs Crystal Gee, Vanya Watson, and Pamela Bass ("Plaintiffs") bring this wrongful death action against Defendants J.B. Hunt, Borderlanders Inc. ("Borderlanders"), and Shokhijakhon Bekmuradov ("Bekmuradov"). (Doc. 6).

1. <u>The Accident</u>

On the evening of October 10, 2023, Bekmuradov, an employee of Borderlanders, was transporting a shipment of medical equipment ("the Load") tendered by J.B. Hunt in

a 70-foot tractor trailer from Denver, Colorado to Phoenix, Arizona. (Id. at 7). Bekmuradov was traveling in Arizona on U.S. Route 160, a rural two-lane highway, when Bekmuradov attempted to pass a recreational truck and trailer by moving into the lane of oncoming traffic. (Id.) The passing zone ended and Bekmuradov remained in the lane of oncoming traffic when a vehicle traveling in the opposite direction rounded a bend. (Id.) In that vehicle were Gregory Cox, his partner Lindsey Watson, and their three children, C.C., P.C., and B.C. (Id.) Bekmuradov's tractor trailer hit the vehicle in a head-on collision ("the Accident") that killed Cox and Watson and severely injured the children. (Id. at 7–8).

The Arizona Department of Public Safety Crash Report (the "Police Report") identifies Defendant Borderlanders as the "Owner/Carrier" of the subject tractor-trailer. (Docs. 180 ¶ 2; 182 ¶ 2). Borderlanders admits that its employee driver, Bekmuradov caused the Accident while he was "performing his commercial truck driver duties for Borderlanders; that [Bekmuradov] was negligent in the operation of the tractor-trailer; that his negligence was a cause of Cox's death, Watson's death, and their children's injuries; and that Borderlanders is vicariously liable for Bekmuradov's negligence." (Id. ¶ 17). Also, Plaintiffs' liability expert, Dr. Thomas Corsi, testified that Borderlanders was the motor carrier physically transporting the Load using Borderlanders' tractor-trailer, Borderlanders' employee driver, and that Borderlanders was authorized to transport property as a motor carrier in the United States when J.B. Hunt tendered[1] the Load to Borderlanders and at the time of the Accident. (Id. ¶ 55).

2. The Agreements

Prior to the Accident, on November 14, 2019, Borderlanders and J.B. Hunt entered into the Outsource Carriage Agreement ("OCA"). (Id. ¶ 8). The OCA states that Borderlanders "shall provide sole supervision and liability for and shall have exclusive

[1] The term "tender" means "[a] valid and sufficient offer of performance; specif., an unconditional offer of money or performance to satisfy a debt or obligation." *Tender*, *Black's Law Dictionary* (12th ed. 2024).

control over the operations of its personnel, contractors, subcontractors, and other agents" and that J.B. Hunt "shall have no right to discipline or direct the performance of any personnel" of Borderlanders. (Id. ¶ 10). The OCA further states that Borderlanders was required to ensure that its drivers were qualified in accordance with the federal motor carrier regulations, had completed required alcohol and controlled-substance testing, had no more than three moving violations in the preceding three years, had no recent DUI or reckless-driving convictions, held valid CDLs, and were otherwise compliant with federal safety regulations. (Id. ¶ 11). The OCA also required Borderlanders to provide its own vehicles and equipment, maintain $1,000,000 in commercial auto liability insurance, and comply with all federal rules and regulations, such as possessing an active license. (Id. ¶ 13).

On October 9, 2023, Lincare Inc. ("Lincare") requested a quote from J.B. Hunt for the shipment of medical equipment (the "Load") from Denver, Colorado to Phoenix, Arizona. (Id. ¶ 18). J.B. Hunt provided a quote of $1,350 for the Load. (Id. ¶ 22). Lincare accepted, and J.B. Hunt uploaded the information to its online platform where Borderlanders bid to transport the Load. (Id. ¶¶ 22, 39-40). Once J.B. Hunt approved the bid, it sent Borderlanders a Carrier Confirmation Agreement ("CCA") confirming that Borderlanders would transport the Load. (Id. ¶ 41). The CCA states that "J.B. Hunt Transport, Inc. ('J.B. Hunt', as a licensed Property Broker hereby arranges for Borderlanders Inc to transport this load as a licensed Motor Carrier." (Id.)

Borderlanders admits that it was solely responsibly for providing and maintaining the equipment used to transport the Load under the terms of the CCA and OCA. (Id. ¶ 53). Further, Borderlanders' representative testified that the subject tractor was leased to Borderlanders from Penske, and the subject trailer was leased to Borderlanders from Cargoprime. (Id.)

3. J.B. Hunt's Alleged Negligence

Plaintiffs also allege that Borderlanders has "a history of hiring inexperienced and incompetent drivers that put the motoring public at risk of catastrophic injury or death." (Doc. 6 ¶ 38). Plaintiffs contend that Borderlanders' trucks were involved in 18 collisions in the twelve months before the Accident, were involved in 35 collisions in the two years before the Accident, had been flagged for a Safety Assessment Alert by the FMCSA in at least one category every single month in the twelve months before the Accident, had been flagged for Safety Assessment Alerts in two or three categories simultaneously in eight of the twelve months, and had been flagged for a Safety Assessment Alert in the "Unsafe Driving" category in seven of the twelve months before the Accident. (Doc. 182 ¶¶ 96-99). Plaintiffs also contend that in the months leading up to the Accident, Borderlanders had repeatedly been cited for violations of federal safety regulations, including for improper passing, improper lane changes, failure to maintain lane, driver inability to read or speak English, texting while driving, speeding, and failure to obey traffic control devices. (Id. ¶ 102).

Plaintiffs also contend that J.B. Hunt never reviewed Borderlanders' accident or crash history, FMCSA safety scores, or safety assessment alerts, or inspection violation history as part of its evaluation of Borderlanders as an outsourced carrier. (Id. ¶¶ 103-05). Plaintiffs contend that J.B. Hunt instead chose to rely solely on Borderlanders' "safety rating" even though it was "not rated." (Id. ¶ 55, 106; Doc. 180 ¶ 55). Plaintiffs also present expert testimony from Dr. Thomas Corsi that J.B. Hunt failed to use reasonable care in the selection and retention of Borderlanders because Borderlanders' safety record and history indicated that its trucks had a heightened risk of being involved in crashes. (Doc. 182 ¶ 108).

**B. Procedural History**

Plaintiff Crystal Gee is the guardian ad litem of C.C., P.C., and B.C. (Doc. 6 at 2–3). Plaintiffs Vanya Watson and Pamela Bass are the surviving parents and statutory

plaintiffs for the surviving beneficiaries of Lindsey Watson and Gregory Cox, respectively. (Id. at 2). Plaintiffs brought this action on March 28, 2024, for wrongful death under vicarious liability and negligent hiring theories against J.B. Hunt and Borderlanders. (Id. at 1). Plaintiffs also filed a negligence claim against Bekmuradov but he has not appeared in this action. Plaintiffs and Borderlanders filed a Stipulation in which Borderlanders admitted that it is vicariously liable for Bekmuradov's negligence and the parties agreed to dismiss all of Plaintiffs' direct liability claims against Borderlanders for negligent hiring, training, supervision, and retention with prejudice under Rule 15(a)(2) of the Federal Rules of Civil Procedure. (Doc. 171). The Court granted the Stipulation. (Doc. 173). The amount of damages are to be determined.

On June 24, 2026, J.B. Hunt filed the instant Motion for Summary Judgment on Plaintiffs' claims against it for (1) vicarious liability for Bekmuradov's conduct as a "statutory employee" of J.B. Hunt "under federal statutes and regulations governing interstate shipping" and (2) negligent hiring of Borderlanders. (Doc. 179 at 3). Plaintiffs filed a Response, (Doc. 181), and J.B. Hunt filed a Reply, (Doc. 183).

## II. LEGAL STANDARD

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-moving party, shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only factual disputes that might affect the outcome of the suit will preclude entering summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material

fact." Celotex, 477 U.S. at 323. "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." Id. "This burden is not a light one" and requires the non-moving party to "come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." Id. Additionally, parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence … of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).

## III. DISCUSSION

J.B. Hunt moves for summary judgment on Plaintiffs' vicarious liability and negligent hiring claims. (Doc. 179). For the following reasons, the Court grants in-part and denies in-part the Motion.

### A. Vicarious Liability

Plaintiffs allege that J.B. Hunt is vicariously liable for Bekmuradov's negligence under the federal leasing statutes and regulations governing interstate shipping. (Doc. 6 at 9).[2] However, J.B. Hunt contends that it is not liable under the federal leasing regulations because there was no lease between J.B. Hunt and Borderlanders. (Docs. 179 at 13-14; 183 at 3-5).

The federal leasing statutes and regulations governing interstate shipping, 49 U.S.C. § 14102 and 49 C.F.R. § 376[3], "regulate common carrier leases of trucks and

---

[2] J.B. Hunt's Motion addressed Plaintiffs' statutory employment vicarious liability theory based on 49 C.F.R. § 390.5 as it was cited in the FAC at ¶ 36. (See Doc. 179 at 11-12). Plaintiffs abandoned this theory as it is not addressed in their Response. (See Doc. 181).
[3] 49 U.S.C. § 14102 is titled "Leased motor vehicles" and 49 C.F.R. § 376 is titled "Lease and interchange of vehicles."

tractor-trailers from other common carriers as well as from truck owners who are not common carriers." Zamalloa v. Hart, 31 F.3d 911, 913 (9th Cir. 1994) (emphasis added).[4] The regulations apply to the following actions of motor carriers registered to transport property:

> (a) The leasing of equipment with which to perform transportation regulated by the Secretary.
> (b) The leasing of equipment to motor private carrier or shippers.
> (c) The interchange of equipment between for-hire motor carriers in the performance of transportation regulated by the Secretary.

49 C.F.R. § 376.1 (emphasis added). A lease is defined as "[a] contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." Id. § 376.2(e). Moreover, these regulations apply only if a carrier-lessee uses non-owned equipment or drivers under a qualifying written or oral lease to perform transportation for which it has accepted liability. See Zamalloa, 31 F.3d at 917-18.

Here, J.B. Hunt contends that there is no statutory authority to hold it vicariously liable under the federal leasing regulations because there was no lease between J.B. Hunt and Bekmuradov or J.B. Hunt and Borderlanders, and the regulations apply only if a carrier-lessee uses non-owned equipment or drivers under a qualifying written or oral lease to perform transportation for which it has accepted responsibility. (Docs. 179 at 13; 183 at 3) (citing Zamalloa, 31 F.3d at 917-18 (requiring an oral or written lease between a motor-carrier and owner-operator)). In response, Plaintiffs argue that the federal motor carrier statutes and regulations impose a nondelegable duty on motor carriers that use non-owned equipment and drivers. (See Doc. 181 at 6). Plaintiffs also contend that a written lease is not required for the statutory employer doctrine to apply. (Id. at 7) (citing

[4] The Interstate Commerce Commission ("ICC") Termination Act of 1995 abolished the ICC and transferred authority to the Surface Transportation Board and the Department of Transportation. See ICC Termination Act of 1995, Pub. L. No. 104-88, § 1, 109 Stat. 803, 804 (1995). Zamalloa was decided in 1994 and discusses 49 U.S.C. § 11107 and 49 C.F.R. § 1057, which were in effect before the ICC Termination Act. But the relevant provisions of these prior laws were re-codified at 49 U.S.C. § 14102 and 49 C.F.R. § 376.

Zamalloa, 31 F.3d at 915-18). Also, notably, Plaintiffs do not contend that a written or oral lease existed between J.B. Hunt and Borderlanders. (See Doc. 181). In fact, Plaintiffs do not dispute any material facts and offer no facts to establish the existence of a lease. (See id.) Rather, Plaintiffs simply cite cases supporting the general proposition that statutory employment can result from the federal regulations. (See id. at 6-10).[5]

The Court finds that the statutory language is clear: the regulations apply only if there is a valid lease. See 49 C.F.R. § 376.1. In this case, it is undisputed that Borderlanders transported the Load under its own authority using its own equipment and driver. (Docs. 180 ¶ 41; 182 ¶ 41) ("J.B. Hunt Transport, Inc. ('J.B. Hunt'), as a licensed Property Broker, hereby arranges for Borderlanders Inc. to transport this load as a licensed Motor Carrier."). It is also undisputed that the CCA and OCA did not confer J.B. Hunt exclusive possession, control, or use of either Borderlanders' equipment or driver. (Id. ¶¶ 16, 41, 53, 55).

Thus, the Court finds that there is no lease, as that term is defined under the governing federal regulations, between J.B. Hunt and Borderlanders, and there is no statutory authority to support Plaintiffs' vicarious claim against J.B. Hunt. The Court also finds that J.B. Hunt has met its burden of proving an absence of evidence to support Plaintiffs' vicarious liability claim. Celotex, 477 U.S. at 323 ("[T]here can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Based on the undisputed material facts, J.B. Hunt did not lease equipment to Borderlanders. Thus, there is no lease, and the federal leasing regulations are inapplicable. The Court declines to address the parties' remaining arguments because the issue of whether there was a lease is dispositive. Accordingly, the Court grants summary judgment for J.B. Hunt on Plaintiffs' vicarious liability claim.

**B. Negligent Hiring**

[5] Plaintiffs also appear to argue for the first time that their claims are based on Arizona law. (See Doc. 181 at 6). But Plaintiffs' First Amended Complaint only pled that J.B. Hunt is vicariously liable under "federal statutes and regulations." (Doc. 6 ¶ 35).

J.B. Hunt also seeks summary judgment on Plaintiffs' state-law negligent hiring claim. (Doc. 179 at 4). Plaintiffs contend that J.B. Hunt is liable for its "negligent hiring, supervision, entrustment, and retention of Borderlanders" and that J.B. Hunt "knew or should have known that Borderlanders had a history of hiring inexperienced and incompetent drivers that put the motoring public at risk of catastrophic injury or death." (Doc. 6 ¶ 38). The Court construes this as a singular "negligent hiring" claim because Plaintiffs' allegations specifically pertain to Borderlanders' hiring of Bekmuradov. (See Doc. 29 at 8).

"An employer is liable under a theory of negligent hiring, retention, and supervision if it fails to make proper regulations; employs improper persons involving risk of harm to others; fails to supervise activity; or permits or fails to prevent negligent or other tortious conduct by employees or agents on the premises or with instrumentalities under the employer's control." Anthony v. United States, 632 F. Supp. 3d 1017, 1031 (D. Ariz. 2022) (citing Restatement (Second) of Agency § 213 (1958)). Pleading a claim of negligent hiring thus requires Plaintiffs to allege 1) that the employee committed a tort, and 2) that "the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." Quinonez for & on Behalf of Quinonez v. Anderson, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984) (quoting Restatement (Second) of Agency, 213 § (1952)); see also Hernandez v. Singh, No. CV-17-08091-PCT-DWL, 2019 WL 367994, at *6 (D. Ariz. Jan. 30, 2019).

Here, J.B. Hunt contends that Plaintiffs' and Borderlanders' Stipulation (Doc. 171) and the Court's subsequent Order (Doc. 173) are dispositive to Plaintiffs' claims against J.B. Hunt. (Doc. 179 at 17). J.B. Hunt contends that Plaintiffs' only underlying tort claim against Borderlanders was for the negligent hiring of Bekmuradov which they voluntarily dismissed with prejudice. (Id.) Thus, J.B. Hunt contends that there remains no underlying tort claim against Borderlanders so Plaintiffs cannot prove an essential element of their negligent hiring claim against J.B. Hunt. (Id.) (citation omitted). But the Arizona Supreme Court recently overruled "DeGraff and its progeny to the extent these cases

suggest that dismissing a claim with prejudice against an employee for reasons unrelated to the merits of that claim requires the court to also dismiss a respondeat superior claim against the employer." Laurence v. Salt River Project Agric. Improvement & Power Dist., 528 P.3d 139, 150 (Ariz. 2023). Moreover, "when tort claims against an employee are not actually adjudicated, dismissal of the employee-claim does not summarily require dismissal of the respondeat superior claim." Id. (citation omitted). Thus, the Court declines to grant summary judgment for J.B. Hunt on Plaintiffs' negligent hiring claim on this ground.

Additionally, J.B. Hunt contends that "Plaintiffs have failed to present any evidence of wrongdoing by Borderlanders in hiring Bekmuradov, including any required expert testimony to establish a violation of the specialized standard of care applicable to federally licensed motor carriers when hiring drivers." (Doc. 179 at 15). J.B. Hunt further contends that when a plaintiff alleges that a defendant has a specific, specialized duty of care requiring knowledge beyond that known by the ordinary layman, expert testimony is required "as to the care and competence prevalent in the business or profession." (Id.) (citing St. Joseph's Hosp. & Med. Ctr. v. Rsrv. Life Ins.,742 P.2d 808, 816 (Ariz. 1987) (citation omitted).

The Court finds that expert testimony is not required to establish the standard of care in this case because the alleged tort could be easily understood by a layperson. Expert testimony is required when "factual issues are outside the common understanding of jurors." Thomas v. Goudreault, 786 P.2d 1010, 1022 (Ariz. Ct. App. 1989). But expert testimony is not required where "the negligence is so grossly apparent that a layman would have no difficulty in recognizing it." Riedesser v. Nelson, 534 P.2d 1052, 1054 (Ariz. 1975). The standard of care for negligent hiring claims may be established by referencing the federal regulations. See, e.g., Contreras v. Brown, No. CV-17-08217, 2019 WL 1980837, at *5 (D. Ariz. May 3, 2019) (analyzing, in the absence of any expert testimony, Plaintiffs claims for negligent hiring and training under the framework set out by the Federal Motor Carrier Safety Regulations); see also Encarnacion v. J.B. Hunt

Transp. Inc., No. CV-24-01384-PHX-MTL, 2026 WL 83996, at *5 (D. Ariz. Jan. 12, 2026) ("Expert testimony likely would have strengthened Plaintiffs' case, but its absence does not warrant summary judgment on this record.").

Here, the question is whether J.B. Hunt knew or should have known that Borderlanders had a history of hiring inexperienced or incompetent drivers that put the motoring public at risk of catastrophic injury or death. This "is not so esoteric that a lay juror would have difficulty understanding it." Uiagalelei v. State, No. 1 CA-CV 19-0274, 2020 WL 5249228, at * 3 (Ariz. Ct. App. Sept. 3, 2020) (holding that negligence in failing to ensure qualifications or provide training for a specific job "is not so esoteric that a lay juror would have difficulty understanding it."). While expert evidence[6] of customary industry practices could bear on whether J.B. Hunt acted reasonably in selecting Borderlanders, the Court finds that a jury is "entitled to evaluate the issue in the context of all the evidence and its own experience." Id.

J.B. Hunt also contends that Plaintiffs present no evidence that J.B. Hunt knew or should have known that Borderlanders had a history of hiring inexperienced or incompetent drivers that put the motoring public at risk of catastrophic injury or death. (Doc. 179 at 17). But Plaintiffs cite evidence that J.B. Hunt never reviewed Borderlanders' publicly available accident and crash history, and FMCSA safety scores, safety assessment alerts, and inspection violation history before selecting Borderlanders. (See Doc. 181 at 17-18). Plaintiffs cite the following: (i) "Borderlanders trucks had been involved in 35 crashes" in the two years preceding the Accident; (ii) "Borderlanders had been flagged for at least one 'Safety Assessment' alert by the FMCSA every single month" from October 2022 through the date of the Accident, including alerts for "Unsafe Driving" and "Driver Fitness"; and that (iii) Borderlanders' "drivers had repeatedly been cited for safety violations, such as improper passing and failure to speak English," which Bekmuradov was cited for in this case. (Id.) Plaintiffs also present evidence from their

[6] The Court notes that Plaintiffs cite expert testimony from Dr. Thomas Corsi in support of their position that J.B. Hunt failed to exercise reasonable care in selecting Borderlanders. (Doc. 181 at 18).

expert, Dr. Thomas Corsi, that J.B. Hunt failed to use reasonable care in selecting Borderlanders. (Id. at 18).

Accordingly, the Court finds that Plaintiffs have presented sufficient evidence in which a rational jury could find that J.B. Hunt knew, or should have known, of the safety risks associated in selecting Borderlanders to transport the Load. The Court thus denies summary judgment to J.B. Hunt on Plaintiffs' negligent hiring claim.

## IV. CONCLUSION

The Court grants J.B. Hunt's Motion on Plaintiffs' vicarious liability claim because there was no lease between J.B. Hunt and Borderlanders and a valid lease is required to support a claim for vicarious liability under the federal leasing regulations. But there remain factual disputes regarding Plaintiffs' negligent hiring claim against J.B. Hunt, therefore, the Court denies J.B. Hunt's Motion on this claim.

Accordingly, for the reasons set forth,

**IT IS ORDERED granting in-part and denying in-part** J.B. Hunt's Motion for Summary Judgment. (Doc. 179). Summary judgment is awarded to J.B. Hunt on Plaintiffs' vicarious liability claim. The Court denies summary judgment on Plaintiffs' negligent hiring claim.

Dated this 18th day of November, 2026.

Stephen M. McNamee
Senior United States District Judge